IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RAYTHEON AIRCRAFT COMPANY,

    Plaintiff,

vs.

JOHN MCKITTRICK AND MJM
INVESTMENTS, L.L.C.,

    Defendants.

Case No. 07-1081-JTM

MEMORANDUM AND ORDER

    The present matter arises on defendants' motion to dismiss for lack of personal jurisdiction, or in the alternative, a change of venue pursuant to 28 U.S.C. § 1404(a) to the Central District of California (Dkt. No. 10). For the following reasons, the court denies defendants' motion.

*I. Factual Background:*

    Defendant McKittrick is a resident of Los Angeles County, California, and works as a loan company executive. Defendant McKittrick is also a pilot. In early 2005, he began negotiations over the telephone and via electronic mail with a representative from Raytheon Aircraft Company ("Raytheon"), n/k/a Hawker Beechcraft Corporation ("HBC"), which led to the purchase of a Beechcraft KingAir C-90 ("the aircraft") in Wichita, Kansas. Defendant's purchase of the aircraft was primarily for his personal use. As part of the Purchase Agreement between defendant McKittrick and Raytheon, defendant was required to travel to HBC, located in Wichita, Kansas, on

multiple occasions for training and delivery of the aircraft. Additionally, Kansas law governs the Purchase Agreement and the application of the Limited Warranty.

Prior to his purchase, defendant established a limited liability company in California for purposes of gaining title to the aircraft. The limited liability company is MJM Investments, L.L.C. ("MJM"). Following the formal organization of MJM, MJM was substituted as the "buyer" of the aircraft through amendments to the Purchase Agreement. MJM agreed to purchase the aircraft from HBC for $2,770,348.00.

Included in the documents that MJM received from Raytheon upon the purchase was a Repair Warranty Agreement, which provided that MJM could take the aircraft to an authorized repair facility at Van Nuys Airport in Los Angeles County, California, to repair any problems or deficiencies discovered with the aircraft at any time.

Following the purchase, MJM arranged to fly the aircraft from Raytheon's manufacturing facility in Kansas to an after-market aircraft parts facility in Sacramento, California in order to modify an upgrade to the aircraft, pursuant to the Aircraft Purchase Agreement. The changes were paid for by Raytheon as part of the Agreement.

After the repairs were concluded, MJM then had the aircraft flown to Van Nuys Airport where it was hangared. Defendant McKittrick, a pilot, completed his flight training and began to use the aircraft for personal flights, including visits to his family's vacation home in Sun Valley, Idaho.

With the aircraft's first flight, defendants allegedly found numerous defects or system malfunctions with the aircraft. Once the repairs were completed in California, Raytheon returned the aircraft to MJM and wrote that the aircraft problems and deficiencies were repaired, that the

aircraft was airworthy, and that it was certified for return to service. The repairs continued throughout 2006 and until January 2007.

In late 2006, defendant McKittrick piloted a January 2007 trip aboard the aircraft with his family from Los Angles to Idaho. While on approach to Sun Valley airport, the GPM system allegedly malfunctioned, leaving McKittrick with no navigation while in heavy cloud cover at night. Throughout the same flight, the aircraft also experienced rapid and sudden cabin air pressure destabilization. Due to McKittrick's ability to see underneath the cloud cover, a highway which led to the airport, he was able to successfully land the aircraft.

Thereafter, McKittrick discovered that during a previous repair of an engine exhaust line at the repair facility in Van Nuys, one or more workers had re-routed an engine exhaust line back into an engine component. This allegedly caused extreme heating damage to the engine housing and could have easily led to a catastrophic engine failure or explosion during flight. In 2007, MJM hired a test pilot to fly the aircraft. The test pilot reported that the aircraft and its navigation systems were unairworthy and dangerous.

MJM then hired counsel to communicate to Raytheon, that, because of numerous problems with the aircraft that Raytheon could not fix, but had represented that it fixed, MJM sought to rescind the Sales Agreement and return the aircraft to Raytheon in exchange for a refund of all consideration paid as well as compensation for incidental damages.

*II. Standard of Review:*

Plaintiff bears the burden of establishing personal jurisdiction over defendant. *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992). In order to demonstrate personal jurisdiction to defeat a motion to dismiss, a plaintiff need only make a prima facie showing

that jurisdiction exists. *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987). The court must accept as true the allegations set forth in the complaint to the extent they are uncontroverted by the defendants' affidavits. *Id*. Plaintiff, however, has the "duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1367 (10th Cir. 1989). The complaint and any affidavits submitted are to be construed, and any doubts are to be resolved, by the court, in the light most favorable to the plaintiff. *Fed. Deposit*, 959 F.2d at 174.

*III. Conclusions of Law:*

Defendants argue that dismissal is appropriate because the court has no personal jurisdiction over defendants. In a diversity action, the federal court determines whether it has personal jurisdiction over a nonresident defendant under the law of the forum state. *Rambo v. American S. Ins. Co.*, 839 F.2d 1415, 1416 (10th Cir. 1988). In order to exercise personal jurisdiction over a nonresident defendant, a court must apply a two-part test to ensure that the "exercise of jurisdiction is sanctioned by the long-arm statute of the forum state" and that due process requirements of the Constitution are satisfied. *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1304 (10th Cir. 1994) (citing Fed. R. Civ. P. 4(e))

The Kansas long-arm statute is construed liberally to allow jurisdiction to the full extent permitted by due process. *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994). The Kansas long-arm statute provides:

> (1) Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an

>individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts: . . . (1) transaction of any business within this state. . . .

K.S.A. § 60-308(b)(1). Defendants' actions in accepting delivery of the aircraft in Kansas qualify as transacting business within the state. *See Heating & Cooling Master Marketers Network Inc. v. Contractor Success Group, Inc.*, 935 F. Supp. 1167, 1170-71 (D. Kan. 1996) (business is transacted within the state when an individual enters the state in person or by agent and, through dealing with another within the state, acts with a purpose to improve his economic conditions).

The court also finds that defendants' actions meet the due process requirements necessary to exercise personal jurisdiction. For the second requirement of due process, the Tenth Circuit has noted a three-part test which requires: (1) that the defendant purposefully avail himself of the benefits of conducting activities in the forum state; (2) that the defendant have sufficient contacts with the forum state that the exercise of personal jurisdiction will not offend traditional notions of fair play and substantial justice; and (3) that the quality and nature of defendant's contacts are reasonable to require him to appear in the forum state. *Smith & Loveless, Inc. v. Caicos Corp.*, 471 F. Supp. 2d 1140, 1149 (D. Kan. 2007) (citing *Rambo v. Amer. S. Ins. Co.*, 839 F.2d 1415, 1419 n. 6 (10th Cir. 1988); *Marcus Food Co. v. Family Foods of Tallahassee, Inc.*, 729 F. Supp. 753, 757-58 (D. Kan. 1990)). The "minimum contacts" requirement between the nonresident defendant and the forum state may be satisfied in one of two ways. General jurisdiction exists where "defendant's contacts with the forum state are so 'continuous and systematic' that the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contact with the state." *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996). Specific

jurisdiction exists where the defendant "purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id*. at 1532.

In order to determine whether specific jurisdiction is present, the court must analyze whether the defendant has such minimum contacts within the forum state "that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Additionally, the court must consider whether the exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of Calif., Solano County*, 480 U.S. 102, 113 (1987). With this inquiry, a court should question whether "exercise of personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case." *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1279 (10th Cir. 2005) (quotation omitted).

Defendants argue that minimum contacts are lacking with the state of Kansas to justify the court's exercise of personal jurisdiction. Specifically, they argue that plaintiff cannot establish that the defendants have systematic and continuous contacts with Kansas and that the defendants have conducted some act or consummated some transaction with Kansas. The court disagrees. The current dispute bears a relationship to defendants' contacts with Kansas. Defendants purchased a plane, through a Sales Agreement, and took possession of that plane, in Kansas. The court finds that there is a relationship between the defendants' actions in Kansas and the present lawsuit. *See Raytheon Aircraft Credit Corp. v. Starship Enterprises, Inc.*, No. 97-1226-WEB, 1998 WL 166582, at *3 (D. Kan. March 20, 1998) (finding the exercise of personal jurisdiction to comport with due process requirements where defendant purchased the aircraft in Kansas, ferried the aircraft to Nevada, and stored the aircraft in Nevada). Defendants directed their actions and activities toward

Kansas by transacting business within the state. Thus, the court finds that defendants could reasonably anticipate being haled into court in Kansas should a dispute arise with respect to the purchased aircraft. *Id*.

Furthermore, the court's exercise of personal jurisdiction over defendants comports with traditional notions of fair play and substantial justice. "In determining whether exercise of jurisdiction is so unreasonable as to violate 'fair play and substantial justice,' it is necessary to consider: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1095-96 (10th Cir. 1998). The court's exercise of personal jurisdiction is reasonable on the facts of the present case. First, the burden on defendant is reasonable because the contract was executed in Kansas and defendant traveled to Kansas several times to complete the purchase and training for the LJ-1737 aircraft. Additionally, the forum state, Kansas, has a great interest in resolving the dispute as Kansas law governs the dispute between the parties. *See Asahi Metal Ind. Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 115 (1987) (the state's interest is implicated "where resolution of the dispute requires a general application of the forum state's law."). Third, the plaintiff has a great interest in convenient and effective relief as the majority of documents and witnesses to be involved in this case will come from HBC. HBC's headquarters and the majority of its employees, including those involved in this dispute, are located in Kansas. Fourth, the forum state, Kansas, is the most efficient place to litigate the dispute because the majority of witnesses and documents are located in Kansas; the alleged

wrong originally occurred in Wichita with the manufacture and delivery of the aircraft; and Kansas law will govern the dispute, pursuant to the Service Agreement. For witnesses located in California who are subject to deposition and those under HBC's control, the witnesses can be made to appear in Kansas. *See OMI Holdings*, 149 F.3d at 1097. Finally, the shared interest of the several states in furthering substantive social policies merits that Kansas is the reasonable jurisdiction. Defendants have demonstrated the presence of substantial contacts with the state of Kansas as well as purposeful availment of the privileges of conducting business in Kansas. Specifically, personal jurisdiction is reasonable because defendants chose for Kansas law to apply to the purchase of the aircraft through the Purchase Agreement; they contracted with HBC knowing it to be a Kansas resident; they voluntarily communicated on numerous occasions with individuals in Kansas; they directed a payment over $2 million to HBC located in Kansas; and they traveled to Kansas on two separate occasions in relation to the purchase of the aircraft.

Defendants also argue that the court should change the venue from the District of Kansas to the Central District for the State of California, located in Los Angeles, California. Primarily, defendants note that the doctrine of *forum non conveniens* permits a district court to determine that venue properly lies to transfer an action, in the interest of justice, to another district where it could have been brought. *U.S. Sprint Communications Co. v. Boran*, 716 F. Supp. 505, 507 (D. Kan. 1988). Under 28 U.S.C. § 1404(a), a court may transfer a case to any other district where it might have been brought originally for the "convenience of parties and witnesses" and "in the interest of justice."

Alternatively, plaintiff argues that the presumption lies in favor of the plaintiff's choice of forum and that the first-to-file rule should control, citing *Big Dog Motorcycles, LLC v. Big Dog*

*Holdings, Inc.*, 351 F. Supp. 2d 1188 (D. Kan. 2005). In *Big Dog Motorcycles*, the court considered a challenge under the Lanham Act, where plaintiff filed suit in the District of Kansas. A separate action was filed in state court in California. Ultimately, the court gave substantial weight to the first-to-file rule and the plaintiff's choice of forum by denying defendant's motion to dismiss. The court noted that plaintiff chose to file the action in the District of Kansas, which created a strong presumption in favor of retaining the case. *Big Dog Motorcycles*, 351 F. Supp. 2d at 1193. The court found:

> The court should consider the following factors in determining whether to transfer a case: the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Id*. (citing *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)). Furthermore, "[t]he plaintiff's choice of forum should rarely be disturbed unless the balance weighs strongly in favor of the movant." *Id*. (citing *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992)).

In the present case, the court finds that under the first-to-file rule, the action should remain in the District of Kansas, and therefore, the court dismisses defendants' motion to change venue to the Central District of California. First, the plaintiff chose to file the action in the District of Kansas, which creates a strong presumption in favor of retaining the case. Defendants cite that the locus of the activity is in California, not Kansas, because the warranty repair work was conducted in California. They further note that to litigate the action in Kansas would prove to be a greater

9

financial hardship for defendants than plaintiff. However, the present action is more advanced than the California action because the court has set its scheduling conference and motions from each party are pending. Aside from the scheduling conference, no other activity has occurred in the California case. Moreover, the court finds that there are no compelling circumstances to justify a change in venue. Specifically, the majority of witnesses and documents are located in Kansas, due to the aircraft's location of manufacture in Wichita, Kansas. For witnesses outside Kansas, plaintiff can compel the witnesses to appear in Kansas. Finally, although the aircraft, if needed, may not be present in Kansas, transporting the aircraft, due to its nature, it is easy to re-locate. The costs of transporting documents and witnesses from Kansas to California would prove to be more burdensome and expensive than the alternative, due to the presence of the witnesses and documents located in Kansas, which play an important role in defendants' claims that allege the plane was defective when delivered in Wichita, Kansas. Therefore, the court denies defendants' motion.

IT IS ACCORDINGLY ORDERED this 14th day of August, 2007, that defendants' motion (Dkt. No. 10) is denied.

                                                   s/ J. Thomas Marten
                                                   J. THOMAS MARTEN, JUDGE